## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

PENNY DEFALICO, Individually and on Behalf
of All Others Similarly Situated,

                Plaintiff,

    v.

FMA ALLIANCE LTD. and JH PORTFOLIO
DEBT EQUITIES LLC d/b/a JH CAPITAL
GROUP,

                Defendants.

Case No.: 18-cv-559

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

### INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, ch. 421-427, Wis. Stats. (the "WCA").

### JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendants directed their collection efforts into the District.

### PARTIES

3.      Plaintiff Penny Defalico is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her debts allegedly incurred for personal, family, or household purposes, namely a personal credit card account.

5.     Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she allegedly engaged in consumer credit transactions – purchases of household goods and services with a personal credit card account.

6.     Defendant FMA Alliance, Ltd. ("FMA") is a foreign limited partnership with its principal offices located at 12339 Cutten Road, Houston, Texas 77066.

7.     FMA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.     FMA is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.     FMA is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10.     Defendant JH Portfolio Debt Equities, LLC ("JH Capital") is a foreign limited liability company with its primary offices located at principal offices located at 5757 Phantom Drive, Suite 225, Hazelwood, Missouri 63042.

11.     JH Capital does business under the ficticious or trade name "JH Capital Group."

12.     JH Capital is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time JH Capital acquires them.

13.     JH Capital uses third-party debt collection agencies, including FMA, to collect consumer debts originally owed to others and currently held by JH Capital.  JH Capital, directly or indirectly, is a debt collector under this arrangement.  15 U.S.C. § 1692a(6).

14.     The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or

2

services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

15. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017).

16. The primary purpose of JH Capital's business, and JH Capital's principal purpose, is the collection of consumer debts. JH Capital's website contains an "About" webpage, which states:

> JH Portfolio Debt Equities is one of the nation's largest investors of unpaid debt, offering innovative and regulatory compliant end-to-end solutions for distressed credit consumers. The Firm invests in portfolios of consumer receivables and works with individuals as they repay their obligations.

*See* https://jhportfoliodebtequities.com/about-jh-capital-group/ (accessed March 26, 2018).

3

17.     JH Capital is engaged in the business of a collection agency, directly and indirectly using the mails and telephone to collect defaulted consumer debts. JH Capital's website contains a "Consumer Resources" page, which states:

> If you are one of our consumers, you might have received something in the mail or received a call from us. JH Portfolio Debt Equities, LLC acquires charged-off accounts from some of the nation's largest lenders and works with select partners to resolve the accounts with consumers.

*See* https://jhportfoliodebtequities.com/consumers/ (accessed March 26, 2018).

18.     Debt purchasers, including JH Capital, are also debt collectors as a matter of Wisconsin law. On its face, Wis. Stat. § 427.103(3) applies to creditors collecting on their own behalf.

19.     Wis. Stat. § 427.103(3) defines debt collector:

> Any person engaging, *directly or indirectly*, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms.

(emphasis added).

20.     Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

21.     At a minimum, debt buyers like JH Capital engage in debt collection indirectly through their servicing agents, like FMA. *See, e.g., Mitchell v. LVNV Funding, LLC*, 2017 U.S. Dist. LEXIS 206440 *16 ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

4

22.     JH Capital is a "merchant" as defined in the WCA, as it has, or claims to have, taken assignment of Plaintiff's former consumer credit card account, originally owed to Citibank, N.A. ("Citibank").  Wis. Stat. § 421.301(25) ("The term [merchant] includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to such person.").

23.     The WCA's debt collection chapter applies to all persons collecting, either directly or indirectly, consumer debts, including merchants collecting debts owed to themselves.

24.     The Western District of Wisconsin has noted: "Unlike the FDCPA, the Wisconsin Consumer Act does not provide exceptions to its general definition of a debt collector." *Hartman v. Meridian Fin. Servs.*, 191 F. Supp. 2d 1031, 1048 (W.D. Wis. 2002).

25.     The Wisconsin Department of Financial Institutions ("DFI") has likewise observed that merchants and creditors are "Debt Collectors" under the WCA:

> Anyone attempting to collect a debt arising from a consumer credit transaction in Wisconsin, whether a merchant doing its own debt collecting or a third-party debt collector, must follow Wisconsin's debt collection law, Ch. 427, Wis. Stats. This is an important point because many merchants collecting debt owed directly to them mistakenly believe that they are exempt from Wisconsin's debt collection law because they are not included within the definition of "debt collector" under the federal Fair Debt Collection Practices Act.

https://www.wdfi.org/wca/business_guidance/creditors/debt_collection/.

26.     In addition to mail and telephone communications, JH Capital also regularly uses Wisconsin courts in its debt collection activities.  A general search on Wisconsin Circuit Court Access ("CCAP") for "JH Portfolio" returns at least 358 actions filed and a general search for "JH Capital" returns at least 74 actions filed.  Upon information and belief, all or almost all of these cases are collection actions against Wisconsin consumers.

5

27.     JH Capital uses both standard collection methods, such as mail and telephone communications, and also civil lawsuits, in its collection business.

28.     JH Capital is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

29.     A company meeting the definition of a "debt collector" (here, JH Capital) is vicariously liable for the actions of a second company collecting debts on its behalf (here, FMA). *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

30.     Sometime prior to January 8, 2018, Plaintiff's "Home Depot"-brand consumer credit card account, issued by Citibank and with an account number ending 0100, went into default.

31.     On or about January 8, 2018, Citibank mailed Plaintiff a "Notice of Assignment" letter, informing Plaintiff that her "Home Depot"-brand consumer credit card account had been sold to JH Capital. A copy of this letter is attached to this complaint as Exhibit A.

32.     Exhibit A contains the following:

Dear PENNY M DEFALICO

Your loan ending in 0100 with a balance of $717.72 has been sold to JH Portfolio Debt Equities, LLC and is no longer owned by Citi. The balance consists of $398.75 of principal, $83.97 in interest, and $235.00 in fees.

Exhibit A.

33.     Exhibit A states that, as of January 8, 2018, the balance of Plaintiff's account ending in 0100 was $717.72, and that the balance consisted of $398.75 of principal, $83.97 in interest, and $235.00 in fees.

6

34. On or about January 9, 2018, FMA mailed a debt collection letter to Plaintiff regarding the same alleged "Home Depot"-brand consumer credit card account, allegedly owed to JH Capital, and allegedly originally owed to Citibank and associated with Plaintiff's Citibank account ending in 0100. A copy of this letter is attached to this complaint as <u>Exhibit B</u>.

35. Upon information and belief, <u>Exhibit B</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

36. Upon information and belief, <u>Exhibit B</u> is a form debt collection letter used by FMA and JH Capital to attempt to collect alleged debts.

37. Upon information and belief, <u>Exhibit B</u> was the first debt collection letter FMA and JH Capital mailed to Plaintiff regarding this alleged debt.

38. <u>Exhibit B</u> contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that the debt collector send the alleged debtor along with, or within five days of, the initial communication:

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing that this debt, or any portion thereof, is disputed, within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

<u>Exhibit B</u>.

39. <u>Exhibit B</u> also contains the following:



<u>Exhibit B</u>.

40.     Exhibit B states that, as of January 9, 2018, Plaintiff's account with JH Capital had a "Total Balance Due" of $398.75.

41.     Upon information and belief, Citibank sold Plaintiff's account to JH Capital along with a "portfolio" of other "bad," "distressed," or "toxic" credit card accounts. *See, e.g., Harvey v. Great Seneca Fin. Corp.*, 2005 U.S. Dist. LEXIS 37002, at *8 (S.D. Ohio July 18, 2005) (debt buyers may "specialize[] in the purchase of and the collection of distressed consumer debt consisting of old defaulted and delinquent obligations or accounts which it purchases in bulk and at a discount from prior creditors.").

42.     Upon information and belief, at the time Citibank sold this portfolio of accounts to JH Capital, Citibank transmitted underlying account information for these accounts to JH Capital, and JH Capital and FMA had access to this account information.

43.     Upon information and belief, at the time Citibank sold this portfolio of accounts to Defendants, Citibank transmitted underlying account history for the accounts, including copies of Citibank's account statements. *See Livermore v. Unifund CCR LLC*, 2018 U.S. Dist. LEXIS 12643, at *2-3 (E.D. Wis. Jan. 26, 2018).

44.     Upon information and belief, the account information that Citibank transmitted to JH Capital states that the "PRINCIPAL" of the debt is $398.75, and that the "CURRENT BALANCE" of the debt is $717.72.

45.     Upon information and belief, the balance stated in Exhibit B, $398.75 is based on the "PRINCIPAL" amount stated in Citibank's underlying account information, rather than the "CURRENT BALANCE" amount.

46.     Upon information and belief, FMA's letter misstates the amount of the debt because it does not include amounts added to the balance as a result of interest and fees. *See*

8

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) ("The unpaid principal balance is not the debt; it is only a part of the debt; the Act requires statement of the debt.").

47.     Understating the balance of the debt is a material misrepresentation.  *See Miller*, 214 F.3d at 875; *Muller v. Midland Funding*, 2016 U.S. Dist. LEXIS 68939, at *6-8 (W.D. Mo. May 26, 2016) (denying judgment on the pleadings where debt buyer understated amount of the debt); *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, *62-63 (D. Mass. Nov. 20, 2012) ("MEEB therefore understated the amount of legal fees owed for both units in the first May 17, 2005 letter.   MEEB's false representation of the amount of the debt through May 17, 2005, thus violated section 1692e(2)(A)."), *amended in part*, 969 F. Supp. 2d 74 (D. Mass. 2013), *aff'd in part, rev'd in part and remanded*, 775 F.3d 109, 127-28 (1st Cir. 2014) (affirming magistrate judge's finding that debt collector violated FDCPA but did not act willfully or knowingly because "in at least one instance, MEEB's incorrect statement about the amount owed by McDermott went in McDermott's favor (i.e., MEEB said he owed less than he really did), which supports her finding that MEEB was not simply trying to increase its legal fees."); *Pickard v. Lerch*, 2005 U.S. Dist. LEXIS 45457, at *13 (S.D. Ind. May 26, 2005) ("The fact that Wright decided to underestimate the amount of debt allegedly owed rather than overestimate is unavailing.").

48.     Understating the balance of a credit card debt has real life consequences for the consumer. Debt collectors generally do not forgive the difference between the understated balance and the real balance.  Consumers who believe they have paid off an account in full are frequently contacted, sometimes years later, by the same or different debt collectors seeking the unpaid amount plus interest, which is often substantial.

9

49.     The unsophisticated consumer who paid the understated amount would be misled into believing that the account was paid in full when in reality, almost half of the debt remains unpaid.

50.     Moreover, a debt collector may induce partial payments by understating the amount of the debt, and misleading the consumer to believe she may eventually be able to pay the debt in full when, in fact, she would be better off discharging the debt in bankruptcy.  *See DeKoven v. Plaza Assocs.*, 599 F.3d 578, 579 (7th Cir. 2010); *see also, Johnson v. Enhanced Recovery Co., LLC*, 228 F. Supp. 3d 870, 878 (N.D. Ind. Jan. 17, 2017) (a false statement is material where "a debt collector might get itself bumped to the top of her list of payments to make.").

51.     Alternatively, FMA's letter states the correct amount of the debt but does so in an unfair, deceptive, and misleading way because it does not explain how the balance was calculated, information which the debtor needs to assess any interest or fees sought by Defendants may likewise have been invalid.  *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004) (debtor stated claims under 15 U.S.C. §§ 1692e(2)(A) and 1692f because debt collector's failure to itemize an accurate, but confusing, balance impaired her ability to knowledgeably assess the validity of the debt); *Pickard v. Lerch*, 2005 U.S. Dist. LEXIS 45457, at *13-14 (S.D. Ind. May 26, 2005) (failure to explain contradiction between two different balances was materially misleading because "even if the Wright letter was not literally false in its statement of the amount of the debt, the Wright letter was confusingly misleading.").

### The FDCPA

52.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect

Case 2:18-cv-00559-JPS    Filed 04/10/18    Page 10 of 22    Document 1

consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

53.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

54.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

11

55.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd,* 868 F.2d 566 (3d Cir. 1989)

56.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information

12

concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

57.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

58.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

59.     15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of—the character, amount, or legal status of any debt."

60.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

61.     15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

62.     15 U.S.C. § 1692g(a) states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

63.     The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer, and cannot only state the principal amount and neglect amounts that are due as a result of interest and fees. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as

14

principal--on the date the dunning letter was sent. We think the statute required this.

64. The debt collector must make the 15 U.S.C. § 1692g disclosures in a non-confusing manner. *See Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 317-18 (7th Cir. 2016).

65. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

66. The Seventh Circuit has also held that a debt collector may not hide the character of a debt; thus where a balance is subject to adjustments that would potentially confuse the unsophisticated consumer as to the amount and character of the debt, "one simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that comprise the total amount of the debt." *Fields v. Wilber Law Firm P.C.*, 383 F.3d 562, 566 (7th Cir. 2004).

67. Where a debt collector has actual or imputed knowledge that the balance of a debt is subject to charges or adjustments that would confuse or mislead a debtor as to the character of that debt, the debt collector must provide adequate notice and disclosure as to the character of the

15

debt and the basis for the adjustments. *Acik v. I.C. Sys.*, 640 F. Supp. 2d 1019, 1023-25 (N.D. Ill. Aug. 6, 2009) ("The question under section 1692e is not whether these charges were fair or proper, but whether the fees were 'clearly and fairly communicated' so that Acik could ascertain the fees' validity.") (applying *Fields*, 383 F.3d 562 (7th Cir. 2004)).

### The WCA

68.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

69.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

70.    To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

71.    "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

72.    To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

16

73.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

74.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

75.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

76.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

77.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

78.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

79.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

80.     DFI has ruled that conduct that violates the FDCPA also violates the WCA.

**DFI−Bkg 74.16 Oppressive and deceptive practices prohibited.** A licensee shall not engage in any oppressive or deceptive practices. In attempting to collect an alleged account, bill or other indebtedness, a licensee shall not do any of the following: …

**(9)** Engage in other conduct which can reasonably be expected to threaten or harass the debtor or a person related to the debtor including conduct which violates the Federal Fair Debt Collection Practices Act.

81.     Misrepresenting the amount of the debt is "conduct which violates the [FDCPA]" and WCA. 15 U.S.C. § 1692e(2)(a), 1692g(a)(1); Wis. Admin. Code § DFI-Bkg 74.16(9).

## COUNT I – FDCPA

82.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

83.     Count I is brought against both Defendants.

84.     Exhibit B states that the "Total Balance Due" is $398.75 but, upon information and belief, the account information Citibank transmitted, which JH Capital and FMA had prior to mailing Exhibit A, shows that JH Capital and FMA knew or should have known that the "Current Balance" of the account was $717.72.

85.     JH Capital and FMA misrepresented the amount of the debt.

86.     JH Capital and FMA knew Plaintiff had not made a payment on the account since it had charged off.

87.     JH Capital and FMA that Exhibit B's use of the phrase "Total Balance Due," alongside Defendants' attempt to collect an amount less than the current account balance, would

18

confuse the unsophisticated consumer about the amount, character, and legal status of the debt because JH Capital and FMA knew Plaintiff had recently received account statements and debt collection letters attempting to collect different amounts on the same account, including <u>Exhibit A</u>, the Notice of Assignment letter that Citibank mailed Plaintiff. *See Fields*, 383 F.3d at 566.

88.     Defendants failed to provide any explanatory language or itemization of credits to clarify why the amount of the debt decreased after charge off even though Plaintiff had not made a payment.

89.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(a)(1).

## <u>COUNT II – WCA</u>

90.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

91.     Count II is brought against both Defendants.

92.     <u>Exhibit B</u> states that the "Total Balance Due" is $398.75 but, upon information and belief, the account information Citibank transmitted, which JH Capital and FMA had prior to mailing <u>Exhibit A</u>, shows that JH Capital and FMA knew or should have known that the "Current Balance" of the account was $717.72.

93.     JH Capital and FMA misrepresented the amount of the debt.

94.     JH Capital and FMA knew Plaintiff had not made a payment on the account since it had charged off.

95.     JH Capital and FMA knew that <u>Exhibit B</u>'s use of the phrase "Total Balance Due," alongside Defendants' attempt to collect an amount less than the current account balance, would confuse the unsophisticated consumer about the amount, character, and legal status of the

19

debt because JH Capital and FMA knew Plaintiff had recently received account statements and debt collection letters attempting to collect different amounts on the same account, including Exhibit A, the Notice of Assignment letter that Citibank mailed Plaintiff. *See Fields*, 383 F.3d at 566.

96.     Defendants failed to provide any explanatory language or itemization of credits to clarify why the amount of the debt decreased after charge off even though Plaintiff had not made a payment.

97.     Misrepresenting the amount of the debt is "conduct which violates the [FDCPA]" and WCA. 15 U.S.C. § 1692e(2)(a), 1692g(a)(1); Wis. Admin. Code § DFI-Bkg 74.16(9).

98.     Defendants violated Wis. Stat. § 427.104(1) and Wis. Admin. Code § DFI-Bkg 74.16(9).

## CLASS ALLEGATIONS

99.     Plaintiff brings this action on behalf of two Classes.

100.    Class I ("Nationwide Class") consists of:

> (a) all natural persons in the United States of America (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt owed to JH Capital and originally owed to Citibank, (d) which debt was incurred for personal, family, or household purposes, (e) in which the collection letter in the form represented by Exhibit B, the "Total Balance Due" to be the "PRINCIPAL" amount, instead of the "CURRENT BALANCE" amount provided by Citibank, (f) where the collection letter in the form of Exhibit B was mailed between April 10, 2017 and April 10, 2018, inclusive, (g) and was not returned by the postal service.

> Expressly excluded from the class are individuals whose differences in balance are attributed solely to additional interest assessed by Defendants after Citibank assigned the debt to Defendants.

101.    Class II ("Wisconsin Class") consists of:

> (a) all natural persons in the United States of America (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this

20

action, (c) seeking to collect a debt owed to JH Capital and originally owed to Citibank, (d) which debt was incurred for personal, family, or household purposes, (e) in which the collection letter in the form represented by <u>Exhibit B</u>, the "Total Balance Due" to be the "PRINCIPAL" amount, instead of the "CURRENT BALANCE" amount provided by Citibank, (f) where the collection letter in the form of <u>Exhibit B</u> was mailed between April 10, 2017 and April 10, 2018, inclusive, (g) and was not returned by the postal service.

Expressly excluded from the class are individuals whose differences in balance are attributed solely to additional interest assessed by Defendants after Citibank assigned the debt to Defendants.

102. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

103. There are questions of law and fact common to the members of the each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA and the WCA.

104. Plaintiff's claims are typical of the claims of the members of each class. All are based on the same factual and legal theories.

105. Plaintiff will fairly and adequately represent the interests of the members of each class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

106. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

107. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and

the Class and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  April 10, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

22